Argued and submitted May 20, reversed and remanded August 10, 1988

## STATE OF OREGON,
*Appellant,*

*v.*

## TAMMY L. SPENCER,
*Respondent.*

(87-CR-72; CA A46001)

758 P2d 885

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Christopher D. Mecca, Grants Pass, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Richardson and Rossman, Judges.

WARREN, P. J.

## WARREN, P. J.

The state appeals the trial court's order suppressing evidence of cocaine which police seized after searching defendant's purse following her arrest for conspiracy to deliver controlled substances. The state argues that the affidavits supporting search warrants for defendant and her vehicle established probable cause for the search. The state also contends that, if the warrants were not valid, the search of defendant's purse was lawful, either as incident to her arrest for conspiracy to deliver controlled substances or under the automobile exception to the warrant requirement. Because we agree that the search was valid incident to her arrest, we reverse.[1]

Several search warrants, including warrants to search defendant and her vehicle for evidence of the crimes of possession and delivery of controlled substances, were issued on the basis of three lengthy affidavits completed by Officer Durbin. Durbin stated in the affidavits that he was contacted by an informant who assisted the police in the investigation of an individual known as "Domecio" and his alleged involvement in the sale of controlled substances. The affidavits state that, in cooperation with the police, the informant made several purchases of contraband from Domecio, who was assisted by "Domingo," and set up a drug purchase of one pound of cocaine to take place on January 29, 1987. The affidavits indicate that numerous individuals and locations were involved in finalizing the details of the purchase. Two suspects other than Domecio and Domingo told the informant that they would have the cocaine at the Dean Street apartments, a place Domecio frequented, by 5:30 p.m. on January 29. Search warrants for individuals, residences and vehicles were obtained by the police on that evening in anticipation of the transaction.

The affidavits refer to defendant five times. She is identified as the registered owner of a 1974 blue Volvo and as Domecio's "girlfriend," who "frequently stays" with him. The affidavits further state that Domecio's driver's license was

---

[1] We do not address the state's argument that the search was justified as incident to the arrest of the other passengers in defendant's vehicle, because we find the state's other argument dispositive of this case.

suspended, that he does not drive and that defendant was present on four occasions when the informant was with Domecio: twice when the informant purchased cocaine from Domecio and twice when arrangements for the substantial cocaine purchase were discussed. On one occasion, the informant arrived at Domecio's hotel room before he did. When Domecio arrived, he was accompanied by defendant and carried in his coat the cocaine which the informant purchased. The informant had also in the past observed defendant's vehicle in the parking lots of two locations where he met Domecio. However, the affidavits do not state that defendant actually transported Domecio in her vehicle, that the informant communicated with defendant or anyone else about her possible involvement in the illegal transactions or that she engaged in any overt act relating to the sale of contraband. At most, they show that she was present when others conducted sales and discussions about drugs. They do not directly establish that she was aware of what was occurring.

When Durbin and other officers arrived at the Dean Street apartments on January 29 to execute a search warrant for the premises, the informant told them that Domecio and defendant had left in defendant's vehicle to get something to eat and would return shortly. On the basis of Durbin's testimony at the pretrial suppression hearing about the events that transpired upon defendant's return, the trial court found

> "[t]hat the evidence established that the 1974 Volvo car was stopped by the driver, the Defendant herein, voluntarily, prior to any contact by police officers; that police officers ordered all occupants out of the car; that police officers identified the person of 'DOMECIO' as being a passenger in the car; that the car, having been stopped by the driver and all occupants removed from the car, was no longer mobile and capable of departing the scene."

Defendant, Domecio, Domingo and four other passengers were in the vehicle. After the police ordered all of the occupants out of the vehicle, Domecio and Domingo were searched pursuant to search warrants, and each was found to have cocaine in his possession. Durbin then searched defendant's vehicle and found a 9mm handgun in the glovebox. He also searched defendant's purse, which was in the vehicle, and found cocaine. During that search, defendant was lying on the

ground outside the car. Durbin testified at the pretrial suppression hearing that he arrested defendant for conspiracy to deliver controlled substances on the basis of facts that he personally knew which supplemented the facts in the affidavits.

"[Prosecutor]: What facts did you have to cause you to believe that she was involved in this conspiracy?

"[Durbin]: She was present during the majority of the negotiations between our informant and Domecio and other subjects that were involved. She was present and personally injected or inhaled narcotics during some of these negotiations with our informant, with Domecio. She had conversations with our informant's girlfriend about the involvement and in the deal [sic] that was being set up. I mean she was actively involved. Many things that aren't narrated in the affidavit.

"[Prosecutor]: Okay. What about her driving the vehicle, the Volvo. Did she drive Domecio around in the vehicle?

"[Durbin]: Many times. Yes.

"[Prosecutor]: So based on the information you obtained from [the informant] and from [the informant's] girlfriend, you felt that she was involved in this conspiracy and you placed her under arrest or it was your intention to have her arrested on that?

"[Durbin]: Yes."

Although defendant was arrested for conspiracy to deliver controlled substances, she was charged with the crimes of possession of a controlled substance, ORS 475.992(4), and unlawful possession of a firearm. ORS 166.250(1). The trial court held that the affidavits did not establish probable cause to believe that evidence of any crime would be found on defendant's person or in her vehicle. In addition, the trial court granted defendant's motion to suppress the cocaine and held that the police lacked probable cause to search her or her personal effects or to arrest her and then search incident to arrest.[2]

_____

[2] The trial court denied defendant's motion to suppress the handgun and held that the police had probable cause to search defendant's vehicle for evidentiary material to identify Domecio and other male occupants and connect them to the crimes for which they were arrested. This appeal relates only to the cocaine seized from defendant's purse.

■     We agree with the trial court that the affidavits do not establish probable cause to believe that defendant possessed or that her automobile contained evidence of any crime. We conclude, however, that the search of defendant's purse was justified as a search incident to arrest. *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

■     In order to arrest defendant and to search incident to that arrest, Durbin must have had probable cause to believe that defendant committed the offense of conspiracy to deliver controlled substances. *See State v. Owens,* 302 Or 196, 203, 729 P2d 524 (1986). At the time of arrest, Durbin knew (1) that defendant frequently transported Domecio in her vehicle; (2) that she was present during negotiations for the purchase of contraband; (3) that on one occasion defendant and Domecio arrived at a meeting after the informant, and Domecio sold cocaine that he had in his coat to the informant; (4) that defendant conversed with the informant's girlfriend about the details of the major cocaine purchase; and (5) that defendant was driving Domecio and Domingo in her vehicle to the location designated for the cocaine purchase on the evening of January 29 when the police arrested her. The elements of the crime of conspiracy[3] "may be established by circumstantial evidence, *i.e.,* may be inferred from the acts or conduct of the alleged conspirators." *State v. Fancher,* 27 Or App 91, 93, 555 P2d 792, *rev den* (1976). Durbin had probable cause to believe that defendant was actively involved in a conspiracy to deliver controlled substances and could arrest her for that reason.

■■     A search incident to arrest must be related to the crime for which the defendant is arrested[4] and must be reasonable in time, space and intensity. *State v. Caraher, supra,* 293 Or at 758-59. The underlying offense, delivery of controlled substances, is itself a possessory offense, evidence of which could easily be concealed on defendant's person or in her belongings. *See State v. Owens, supra,* 302 Or at 200. Her

---

[3] ORS 161.450(1) provides:

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, the person agrees with one or more persons to engage in or cause the performance of such conduct."

[4] The state does not argue that the search of defendant's purse was for the purposes of protecting the officer's safety or preventing the destruction of evidence.

possession of contraband would also be evidence of her involvement in the conspiracy.[5] The search was contemporaneous with her arrest and limited to areas and articles within her immediate control. *State v. Chinn,* 231 Or 259, 267-68, 373 P2d 392 (1962). We conclude that it was reasonable to believe that contraband might be found in defendant's purse and automobile and that the searches were justified as incident to her arrest. *See State v. Gordon,* 71 Or App 321, 327, 692 P2d 618 (1984), *rev den* 298 Or 705 (1985).

Reversed and remanded.

---

[5] In *State v. Fesler,* 68 Or App 609, 613, 685 P2d 1014, *rev den* 297 Or 547 (1984), we held that the search of the defendant for his wallet was valid as incident to his arrest for driving with a suspended license and giving a false name. The search related to the offense in that the defendant's *knowledge* that his driver's license was suspended would have been relevant, because "it would further tend to show defendant's consciousness of guilt if the wallet had been hidden."