Argued and submitted October 12, 1981, reversed and
remanded for trial February 22, reconsideration denied April 1,
petition for review denied June 22, 1982 (293 Or 340)

## STATE OF OREGON,
*Appellant,*

*v.*

## MICHAEL DEAN MORRIS,
*Respondent.*

(No. C 79-02-30615, CA A20650)

641 P2d 77

Stephen F. Peifer, Assistant Attorney General, Salem,
argued the cause for appellant. With him on the brief were
Dave Frohnmayer, Attorney General, and William F. Gary,
Solicitor General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem,
argued the cause for respondent. With him on the brief was
Gary D. Babcock, Public Defender, Salem.

Before Joseph, Chief Judge, and Warden and Warren,
Judges.

WARDEN, J.

## WARDEN, J.

The state appeals the trial court's pretrial order suppressing evidence obtained during a warrantless search of defendant's person. The state contends that the search was performed incident to arrest after a lawful stop of defendant and two companions.

The facts are undisputed. On February 24, 1979, police officer Duley was on patrol with his partner, Officer Lerwick, in a marked police car. At about 3:05 a.m., the officers were on East Powell Valley Road near Southeast Kane in Gresham. Their attention was drawn to defendant, who was walking east on Powell with two other young males. Officer Duley testified that at least two of the pedestrians appeared to be juveniles and the officers, suspecting a possible curfew violation, decided to stop them to ascertain their ages and what they were doing. The officers stopped behind the youths and Duley called out to them to halt. Defendant immediately stopped about 15 yards from the patrol car, but the other two continued walking. Duley then went ahead on foot, apprehended the two youths and assembled all three near the patrol car. At that time, Duley noticed that the three subjects had numerous items of property with them. Defendant had on a nylon back pack, apparently "full of objects," and there was a large bulge underneath the front of his shirt. One of defendant's companions was carrying a box labeled "Sanyo Stereo" and had a back pack similar to defendant's, which was also "full of items." The third youth had a large bulge around his waist, which appeared to be caused by an object under his jacket. The officers questioned the three subjects about their ages. Defendant produced identification which indicated that he was 19. The other youths, who were later determined to be brothers, said they were 18 and 17, but neither had identification. While the three subjects were standing together, one of them volunteered that they had found the property in a vacant house near the Fred Meyer store at Powell and Burnside, two to three blocks west of where they stood.

Two other officers arrived, and at the officers' request defendant and the others placed the property in their possession on the hood of one of the patrol cars. The property included numerous items of clothing and small

appliances, all of which carried "Fred Meyer" price stickers. Defendant was then questioned by Officer Duley about the source of the property. Defendant told the officer that the three of them had removed the items from the Fred Meyer stockroom after gaining entry through a garbage bin.[1] After it had been determined that the two brothers were 16 and 17 years of age, they were taken into custody for curfew violation and transported to the police station. Officer Duley thereafter advised defendant of his Miranda[2] rights.

Defendant was charged with burglary in the second degree. ORS 164.215. Following the suppression hearing, the trial court entered an order suppressing all evidence "* * * seized from or about defendant's person pursuant to a stop of defendant and subsequent search * * *." The trial court based its order on the finding that "[t]he stop and the search and the seizure were without justification of reasonable suspicion, under State v. Valdez, [277 Or 621, 561 P2d 1006 (1977)] * * *." Defendant does not contest the state's contention that there was probable cause to arrest defendant after the stop was made. The sole issue before us is the validity of the initial stop.

The state contends that the stop was valid, because the officers reasonably believed that the three youths were curfew violators and, hence, subject to detention. The curfew hours for minors are set forth in ORS 419.710:

"No minor shall be in or upon any street, highway, park, alley or other public place between the hours of 12 midnight and 4 a.m. of the following morning, unless:

"(1) Such minor is accompanied by a parent, guardian or other person 18 years of age or over and authorized by the parent or by law to have care and custody of the minor;

"(2) Such minor is then engaged in a lawful pursuit or activity which requires his presence in such public places during the hours specified in this section; or

"(3) The minor is emancipated pursuant to ORS 109.550 to 109.565."

---

[1] The motion to suppress went only to physical evidence seized during the stop. The question of whether statements made by defendant should have been suppressed was not before the trial court, nor is it a subject of this appeal.

[2] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

Detention for violators is authorized by ORS 419.760:

"Any minor who violates ORS 416.710 or an ordinance established under ORS 419.750 may be taken into custody as provided in ORS 419.569[3] and may be subjected to further proceedings as provided in ORS 419.472 to 419.597, 419.800 to 419.840 and subsection (2) of 419.990."

We are not concerned with whether the officers had a reasonable belief that the three youths were minors. Neither party argues that point. We are concerned with whether (1) police officers are authorized by the juvenile statutes to stop persons suspected of being minors violating the curfew statute, and (2), if such stops are permitted by the statutes, they violate the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution.[4]

Defendant first contends that the authority of police officers in Oregon to stop persons on less than probable cause is limited by ORS 131.615:

"(1) A peace officer who reasonably suspects that a person *has committed a crime* may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

---

[3] ORS 419.569 provides:

"(1) A child may be taken into temporary custody by a peace officer, counselor, employe of the Childrens Services Division or by any other person authorized by the juvenile court of the county in which the child is found, in the following circumstances:

"(a) Where, if the child were an adult, he could be arrested without a warrant; or

"(b) Where the child's condition or surroundings reasonably appear to be such as to jeopardize his welfare; or

"(c) Where the juvenile court, by order indorsed on the summons as provided in subsection (3) of ORS 419.486 or otherwise, has ordered that the child be taken into temporary custody.

"(2) A private person may take a child into temporary custody in circumstances where, if the child were an adult, the person could arrest the child."

[4] The Fourth Amendment of the United States Constitution provides, in relevant part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, * * *."

Article I, section 9, of the Oregon Constitution provides, in relevant part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure; * * *."

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion." (Emphasis added.)

ORS 131.605(1) defines "crime" as provided in ORS 161.515:

"(1) A crime is an offense for which a sentence of imprisonment is authorized.

"(2) A crime is either a felony or a misdemeanor."

Defendant argues that, because a curfew violation is not a "crime" for purposes of ORS 131.615, a suspicion that a person is a minor and in violation of curfew laws cannot justify a stop. The state admits that the officers' sole reason for stopping the youths was to investigate of possible curfew violations. Defendant's argument might have some validity if ORS 131.615 were the sole authority to stop persons on less than probable cause. The case law, however, does not support such a determination. In *State v. Valdez,* 277 Or 621, 624, 561 P2d 1006 (1977), upon which the trial court relied, the Supreme Court stated that "[a]n officer's authority to stop and interrogate a person *concerning his possible commission of a crime* is covered by ORS 131.615 * * *." (Emphasis added.) In that decision, the court analyzed the scope of reasonable suspicion, but did not address the issue of stops for reasons other than for criminal investigatory purposes. In *State v. Tourtillott,* 289 Or 845, 853, 618 P2d 423 (1980), *cert denied,* 451 US 972, 68 L Ed 2d 352 (1981), the Supreme Court did address the issue and held that the legislature did not intend to prohibit game checkpoint stops by enacting ORS 131.615. The court stated:

"Police, in performing their assigned functions, stop persons in a variety of ways and for a variety of reasons. For example, they may stop a motorist to warn of a washout ahead and learn, by looking into the car, of evidence leading to the arrest of the driver or an occupant. We believe that the legislature considered and rejected a rule permitting *only* stops based upon reasonable suspicion or probable cause. * * *"

■ We hold that the legislature, in enacting the curfew statute, intended police officers to have authority to

stop persons suspected of being minors violating curfew laws, and that ORS 131.615 is not the exclusive authority for peace officers stopping persons.

■ The constitutionality of the stop presents a more difficult question. Both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution impose limitations on search and seizure "in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martinez-Fuerte*, 428 US 543, 544, 96 S Ct 3074, 49 L Ed 2d 1116 (1976). Under Article I, section 9, we must accord the defendant at least as much protection as that provided by the Fourth Amendment of the Constituion of the United States. *State v. Tourtillott, supra,* 289 Or at 854. We will, therefore, examine the constitututional question in the light of the Fourth Amendment analyses of the Supreme Court of the United States.

In *Brown v. Texas,* 443 US 47, 99 S Ct 2637, 61 L Ed 2d 357 (1979), the Court held that an officer's stop of the defendant to ask for identification without reasonable suspicion of criminal activity violated the Fourth Amendment. In that opinion, the Court discussed the balancing process used to determine if the stop was constitutional:

"* * * Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. See, e.g., *[United States v. Brignoni-Ponce],* 422 US, at 878-883, 45 L Ed 2d 607, 95 S Ct 2574.

"A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. See Delaware v Prouse, 440 US 648, 654-655, 59 L Ed 2d 660, 99 S Ct 1391 (1979); United States v Brignoni-Ponce, supra, at 882, 54 L Ed 2d 607, 95 S Ct 2574. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit,

neutral limitations on the conduct of individual officers. Delaware v Prouse, supra, at 663, 59 L Ed 2d 660, 99 S Ct 1391. See United States v Martinez-Fuerte, 428 US 543, 558-562, 49 L Ed 2d 1116, 96 S Ct 3074 (1976)." 443 US at 50-51.

The Court concluded that, absent any basis for suspecting a person of misconduct, the general social objective of crime prevention does not outweigh one's right to personal security and privacy.

In the present case, the social objective behind the curfew statutes is the protection and well being of children. The United States Supreme Court, in upholding the constitutionality of statutes designed to protect children, has stated that "the well being of its children is of course a subject within the state's constitutional power to regulate * * *." *Ginsberg v. New York*, 390 US 629, 639, 88 S Ct 1274, 20 L Ed 2d 195 (1968). Unlike *Brown*, the curfew statute does not give officers "unfettered discretion" to stop every person on the streets. The officers must have a reasonable suspicion that the person is a minor violating curfew laws. We conclude that society's interest in the well-being of its youth is sufficiently substantial to justify the minimal intrusion upon defendant's Fourth Amendment rights for the purposes of determining his age and activities.

We hold that the initial stop of defendant was lawful and that the trial court erred in granting the motion to suppress physical evidence seized pursuant to that stop.

Reversed and remanded for trial.