Submitted March 6, reversed and remanded September 20, 2017

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ELISE FERN CHAMBERS,
*Defendant-Appellant.*

Washington County Circuit Court
C151620CR; A161096

404 P3d 1122

Per C. Olson, Megan E. McVicar, and Hoevet Olson Howes, PC, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**SHORR, J.**

Defendant appeals her convictions for unlawful possession of a Schedule II controlled substance, ORS 475.752 (3)(b), and unlawful possession of a firearm, ORS 166.250. Defendant assigns error to the trial court's denial of her motion to suppress. She contends that the evidence discovered by Washington County deputies after she was stopped by a probation officer should have been suppressed pursuant to Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. She maintains that the deputies' reasonable suspicion that she had violated her diversion agreement, which she entered into following a charge for driving under the influence of intoxicants (DUII), did not provide a lawful basis for stopping her. We conclude that the trial court erred when it concluded that a reasonable suspicion that defendant had violated her diversion agreement provided a lawful basis on which to stop her. Accordingly, the stop was unlawful, and defendant's motion to suppress the evidence discovered as a result of the stop should have been granted. Therefore, we reverse and remand.

When reviewing a denial of a motion to suppress, "we are bound by the trial court's findings of historical fact that are supported by the evidence in the record." *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014). "[O]ur role is to decide whether the trial court correctly applied the law to those historical facts." *Id.* We state the facts consistently with that standard.

The events at issue occurred at a DUII victim-impact panel that defendant was attending as a requirement of her DUII diversion agreement. After the program started, Deanna Kemper, a Washington County community corrections probation officer, acting in this instance as the panel coordinator, noticed that defendant was fidgeting and swaying repeatedly. Another attendee complained to Kemper that defendant was using a tennis ball to rub her legs and her upper thighs in a way that was "highly distracting." Kemper became concerned that defendant "was distracting to others, was under the influence of drugs, and was unable to focus on the presentations."

Kemper decided to investigate what the problem was. Kemper asked two reserve deputies, who were providing general security, to ask defendant to leave the auditorium with them so that Kemper could talk to defendant. "If defendant could be returned to the auditorium without disrupting others, it was [Kemper's] plan to have defendant return in order that she could complete her Diversion obligation." When Deputy Chesler approached defendant, he noticed that she was "sweating profusely, more so than would be explained by the hot auditorium conditions."

Defendant willingly followed the deputies out of the auditorium into the main hallway. Both Kemper and Chesler observed that "defendant noticeably swayed as she walked," to the point that she needed to be physically guided out of the auditorium. Once in the hallway, Kemper directed defendant to sit in a chair, which was backed up against a wall. Kemper blocked defendant's exit from the building. Kemper confronted defendant about her concerns that defendant was under the influence of illegal drugs. Defendant eventually admitted that she had taken two Adderall earlier that day and that she did not have a prescription for them. As the interaction continued, Chesler suspected that defendant had illegal drugs in her purse and asked if he could look inside it; defendant gave him permission to do so. Among other items, Chesler found a loaded .38 Smith and Wesson revolver, an expired concealed weapon permit, and some Adderall pills. Defendant was arrested and charged with possession of a weapon in a public building, ORS 166.370, unlawful possession of a Schedule II controlled substance, ORS 475.752 (3)(b), and unlawful possession of a firearm, ORS 166.250.

Before her trial, defendant filed a motion to suppress the evidence that the deputies found in her purse on the basis that the deputies had seized her and searched her handbag unlawfully. The state argued that Kemper and the deputies had a lawful basis to stop defendant based on a reasonable suspicion that she was in violation of the conditions of her diversion agreement. The state relied on *State v. Hiner*, 240 Or App 175, 246 P3d 35 (2010), in which we held that the authority to arrest a person based on probable cause that the person has committed a probation violation

implies the authority to stop a person based on reasonable suspicion of a probation violation. Defendant argued that a deputy's reasonable suspicion of a person's violation of a diversion agreement is not a constitutional basis for a stop. The trial court concluded that defendant was stopped "when Ms. Kemper blocked the defendant's egress from the building." After that ruling, the court allowed the parties time to prepare and submit written arguments to address whether there was sufficient evidence to support a reasonable suspicion for the basis of the stop—that defendant had violated her diversion requirements.

The court ultimately concluded that, based on the totality of the circumstances, Kemper had reasonable suspicion sufficient to stop defendant when Kemper blocked defendant's egress from the building. The court stated that "defendant's inability to walk from her chair to the hallway without physical guidance and without wavering" was "especially probative" and concluded that reasonable suspicion existed that "defendant was using *** either illegal controlled substances or legal controlled substances in a manner that was not prescribed." Because such use of controlled substances violated defendant's diversion agreement and provided a lawful basis for the stop, the court denied defendant's motion.

Defendant tried the case to the court based on the evidence presented at the hearing on the motion to suppress. The trial court acquitted defendant of the charge of possession of a weapon in a public building and entered a judgment of conviction on the charges of unlawful possession of a Schedule II controlled substance, ORS 475.752(3)(b), and unlawful possession of a firearm, ORS 166.250. This appeal followed.

On appeal, defendant assigns error to the trial court's conclusion that there was a lawful basis on which to stop her. Defendant argues that, because "the provisions of Oregon's statutory DUII diversion program do not expressly or implicitly authorize officers to stop or arrest a person for failing to comply with the conditions of a DUII diversion agreement," reasonable suspicion that she had violated the agreement was not a basis on which she could be

stopped. Thus, she asserts that the evidence that the deputies obtained after Kemper stopped her should have been suppressed under both Article I, section 9, and the Fourth Amendment.[1]

In response, the state argues that Kemper and the deputies' reasonable suspicion that defendant had violated her diversion agreement provided them with a lawful basis for stopping her. In support, the state cites *Hiner* and the statutes governing DUII diversion agreements, ORS chapter 813. The state also asserts two alternative bases on which it argues that we should affirm the trial court—either that there was no stop or that Kemper and the deputies had reasonable suspicion to stop defendant on the basis that she had recently possessed illegal drugs.

We review the trial court's ruling on defendant's motion to suppress for errors of law. *State v. Baker*, 350 Or 641, 650, 260 P3d 476 (2011). Article I, section 9, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Evidence must be excluded when it is seized without a warrant or a constitutionally sufficient exception to the warrant requirement. *State v. Scruggs*, 274 Or App 575, 582, 362 P3d 265 (2015). In cases of warrantless search or seizure, the state has the burden to demonstrate that a valid exception to the warrant requirement exists. *Id.* at 582-83.

A stop is "a type of seizure that involves a temporary restraint on a person's liberty." *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010). Generally, a stop "violates Article I, section 9, unless justified by, for example, necessities of a safety emergency or by reasonable suspicion that the person has been involved in criminal activity." *Id.* at 309. In addition, we have previously concluded that an officer may stop a person based on a reasonable suspicion that the person has engaged in conduct for which the

---

[1] We do not consider defendant's Fourth Amendment challenge because, under the "first-things-first" approach, we address a defendant's federal constitutional claims only if we determine that the state's conduct did not violate the Oregon Constitution. *State v. Newcomb*, 359 Or 756, 764, 375 P3d 434 (2016).

legislature has explicitly provided a statutory authority to arrest because "it is reasonable and necessary to imply the authority to stop persons reasonably suspected of [such conduct]." *State v. Steinke*, 88 Or App 626, 628-29, 746 P2d 758 (1987).

In *Hiner*, a deputy stopped the defendant because the deputy "had a subjective belief that defendant was in violation of the terms of his probation." 240 Or App at 179 (internal quotation marks and brackets omitted). The defendant argued that the deputy did not have the statutory authority to stop him based on the suspicion that he had violated his probation because a probation violation is not a crime. *Id.* at 180. Without considering whether a probation violation is a crime, we held that the deputy had the authority to stop the defendant based on his authority, under ORS 137.545(2), to arrest the defendant for a probation violation. *Id.* We reasoned that "[t]he authority to arrest a probationer for violation of a probation condition implies the authority to stop persons reasonably suspected of violating that probation condition." *Id.* Similarly, in *Steinke*, 88 Or App at 628-29, we held that, because an officer is authorized to arrest a person without a warrant based upon probable cause to believe that the person has violated an abuse-prevention restraining order under ORS 133.310(3), an officer is implicitly authorized to stop a person who is reasonably suspected of violating such an order. *See also State v. Morris*, 56 Or App 97, 102-03, 641 P2d 77, *rev den*, 293 Or 340 (1982) (holding that, because the curfew statute authorized officers to take minors into custody for violating it, the statute provided authority to stop a minor whom an officer reasonably suspected to be in violation of the curfew).

In *Hiner*, *Steinke*, and *Morris*, we concluded that explicit statutory authority to arrest a person based on probable cause of certain statutory violations included the implicit authority to stop a person based on reasonable suspicion of violating those statutes. The state argues that that principle applies in this case because the diversion statutes, while they do not expressly authorize arrest, "provide authority to designated agencies and organizations to monitor and report on a defendant's compliance with the requirements of

diversion." In support of that argument, the state points to ORS 813.260(2),[2] which provides, in part, that

> "[m]onitoring of a defendant's progress under a diversion agreement shall be the responsibility of the agency or organization performing the screening interview. The agency or organization shall make a report to the court stating the defendant's successful completion or failure to complete all or any part of the treatment program specified by the screening interview."

To help determine whether Kemper and the deputies' reasonable suspicion that defendant had violated her diversion agreement provided a lawful basis for a stop, we compare the authority to arrest in the statutes involved in *Hiner, Steinke,* and *Morris* with the authority in the diversion statute to "monitor" a defendant and "report" the defendant's progress in the diversion program to the court. ORS 813.260(2). *Hiner* involved ORS 137.545(2), which provides that "[a]ny parole and probation officer, police officer or other officer with power of arrest may arrest a probationer without a warrant for violating any condition of probation." *Steinke* involved ORS 133.310(3), which allows a peace officer to "arrest and take into custody a person without a warrant" upon probable cause that the person has violated an abuse prevention restraining order. *Morris* involved *former* ORS 419.760 (1963), *repealed by* Or Laws 1993, ch 33, § 373, which gives authority to take minors into "custody" for violating the curfew statute, *former* ORS 419.710 (1953), *repealed by* Or Laws 1993, ch 33, § 373.

Here, the state's argument relies on the premise that the authority for "monitoring" under ORS 813.260(2) is sufficiently similar to the authority to "arrest * * * without a warrant" that, under *Hiner* and similar cases, Kemper and the deputies had the legal authority to stop defendant based on a reasonable suspicion that she had violated her diversion agreement. However, the state does not explain how the state's authority to monitor and report to the court a defendant's progress is equivalent to the authority to arrest. As

---

[2] ORS 813.260(2) has been amended since defendant was stopped; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

defendant points out, "[n]othing in the statutory provisions relating to the DUII diversion program expressly or implicitly authorizes an officer to arrest or stop a program participant for failing to comply with the terms of the diversion agreement." Indeed, the state's only express authority under ORS 813.260(2), following a defendant's breach of a diversion agreement, is to *report* a defendant's failure to complete the diversion program to the court for its consideration. That statute neither expressly nor impliedly authorizes the state to stop and search a defendant.

As noted, it is the state's burden to demonstrate that a lawful basis for the stop existed. *Scruggs*, 274 Or App at 582-83. We conclude that the state did not meet its burden in the trial court to prove that Kemper and the deputies had a lawful basis on which to stop defendant. It has not demonstrated how the reasoning that we applied in *Hiner* and similar cases compels the same result in this case. ORS 813.260(2) did not provide the deputies with the authority to stop defendant based on their suspicion that she had violated her diversion agreement.

We next turn to the state's alternative bases for affirmance under the "right for the wrong reason" principle. That principle gives discretion to a reviewing court "to affirm the ruling of a lower court [on a basis different from the one on which it was decided] when certain conditions are met." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001). The first condition is that, "if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance." *Id.* That requires

"(1) that the facts of the record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Id.* at 659-60.

The state asserts two alternative bases on which it urges us to affirm the trial court's denial of the motion to

suppress. The first is that no unlawful stop occurred because defendant consented to attend the victim-impact panel, and "[t]hat consent necessarily encompassed consent to submit to reasonable procedures for administering the program and documenting compliance or noncompliance with the requirement." The second is that the deputies could lawfully stop defendant based on a reasonable suspicion that she had recently unlawfully possessed a controlled substance.

Defendant argues that, under the rule articulated in *Outdoor Media Dimensions Inc.*, the state has not demonstrated that this court has discretion to consider either of its proposed alternative bases for affirmance. As to the first alternative basis for affirmance, defendant argues that there are no facts in the record to support the argument that defendant was not stopped because, by attending the victim-impact panel, she consented to "reasonable procedures for administering the program and documenting compliance or noncompliance with the requirement." We agree with defendant that, had the state presented this argument to the trial court, which it did not, the record may have developed differently. Defendant could have presented evidence and made arguments about the procedures that the state claims defendant consented to. Without evidence in the record demonstrating what the attendees of the panel expected or agreed to when they attended the panel, the state is "simply speculat[ing]" about what defendant understood that she was consenting to. For instance, Kemper did not know of any signs in the building where the panel was held stating "that people can be subject to * * * search of their handbags and so forth." We decline to consider the state's first alternative basis for affirmance.

We also decline to consider the state's second alternative basis for affirmance. On appeal, the state argues that the deputies had reasonable suspicion to stop defendant based on the fact that she had *recently* possessed a controlled substance. However, the state did not advance that argument below. It seemingly conceded that it was *not* arguing that the deputies could stop defendant based on reasonable suspicion of defendant's possession of illegal drugs. Rather, the state argued it could stop defendant based on the

deputies' reasonable suspicion that defendant had violated the diversion agreement by appearing under the influence of drugs and being disruptive at the victim impact panel. We agree with defendant—the state's argument on appeal is sufficiently different from the arguments it presented to the trial court that, had the state made it, the record could have been materially different.

In summary, we conclude that the trial court erred in determining that the state met its burden of proving a lawful basis for the stop of defendant. The stop was unlawful, and defendant's motion to suppress the evidence seized as a result of the stop should have been granted.

Reversed and remanded.