746 April 16, 2025 No. 339

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEXANDER DIXON MILLER,
*Defendant-Appellant.*

Marion County Circuit Court
20CR00850; A177904

Lindsay R. Partridge, Judge.

Argued and submitted January 22, 2024.

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

ARMSTRONG, S. J.

Reversed and remanded.

## ARMSTRONG, S. J.

Defendant appeals a judgment convicting him of two counts of luring a minor, assigning error to the trial court's denial of his motion to suppress the evidence obtained from a traffic stop, which evidence the state introduced at trial to support the luring charges. Defendant first argues that the police officer who stopped and arrested him did not have authority to investigate a suspected violation of defendant's post-prison supervision (PPS) conditions and, in the alternative, that the officer did not have reasonable suspicion of a crime to justify expanding the scope of the traffic stop. The state responds that the officer had implied authority to arrest defendant for the suspected violation of defendant's PPS conditions and, alternatively, that the officer articulated specific facts that gave rise to reasonable suspicion of a crime. We conclude that the trial court erred in denying defendant's suppression motion because, absent an arrest order from a person's supervising officer, a police officer does not have authority to arrest the person for violating a PPS condition, which also means that an officer does not have authority to investigate a suspected violation of a PPS condition. Accordingly, we reverse and remand.

We review a trial court's ruling on a motion to suppress for legal error and are bound by the trial court's factual findings if there is constitutionally sufficient evidence to support them. *State v. Arreola-Botello*, 365 Or 695, 697, 451 P3d 939 (2019); *State v. Krieger*, 318 Or App 441, 442, 508 P3d 62 (2022). Constitutional violations require the suppression of evidence. *State v. Chambers*, 287 Or App 840, 844, 404 P3d 1122 (2017). The relevant facts are as follows.

While conducting a night-time patrol, Officer Jimenez saw a vehicle parked in the lot of a public park after the park had closed. As Jimenez drove his patrol car into the lot, the vehicle began driving away, and Jimenez followed. Jimenez could not make out the vehicle's rear license plate number from "a couple hundred feet" away because the vehicle did not have the required lighting equipment to illuminate the rear license plate. Jimenez drove closer behind the vehicle to read the license plate, searched the plate number on his mobile terminal device, and saw that the owner of the

vehicle, defendant, was a registered sex offender. Jimenez also saw that defendant was on PPS and that one of those PPS conditions prohibited contact with minors. Jimenez initiated a traffic stop based on the vehicle not having required lighting equipment for the rear license plate.

Jimenez approached the driver-side window of defendant's vehicle and gave defendant the reason for the stop. As Jimenez was doing so, he observed defendant's cell phone on defendant's lap with the screen visibly facing upwards, and noticed that defendant was trying to close out of a video call app. Jimenez, being a father of teenage daughters, thought that the caller on the phone screen appeared to be a teenage girl, and he suspected that defendant was violating a PPS condition of not having contact with minors. Defendant closed out of the video call app.

Jimenez asked defendant for his driver's license and other driving documents, and, as defendant was searching for those, another video call from the same caller appeared on defendant's phone screen. This time Jimenez was able to see the caller "for a much longer period," which strengthened his belief that the caller was a teenager. Defendant "frantically" tried to close the application and stated that the caller was "bothering him."

At that point, Jimenez believed that he had "reasonable suspicion to believe that [defendant] was in violation of his" PPS conditions. He asked defendant how old the caller was, defendant responded that she was 18, and Jimenez asked defendant if he knew why the question came up. Defendant responded in the affirmative. Jimenez asked to contact the caller to confirm her age, defendant provided the caller's information, and the caller stated that she was 16 years old. Jimenez then called defendant's supervising officer, left a voicemail when the supervising officer did not answer, *Mirandarized* defendant, took defendant to the back of the patrol car, and questioned defendant about his communication with the teenage caller. Defendant made several incriminating statements in the course of that questioning. Defendant's supervising officer returned Jimenez's call, Jimenez mentioned defendant's incriminating statements, and the supervising officer issued a detainer for defendant's

arrest. Jimenez never issued a citation for the rear license plate light.

The state charged defendant with two counts of luring a minor and three counts of sexual abuse in the second degree. Defendant moved to suppress all evidence that Jimenez had obtained from the traffic stop. The trial court denied the motion. After the court denied defendant's suppression motion, defendant waived his right to a jury trial, and the parties proceeded to a bench trial on stipulated facts. *Cf. Krieger*, 318 Or App at 445 (written jury waiver required in order to proceed with trial on stipulated facts). The stipulated facts reflect that defendant knew that the caller was under the age of 18, that he had sent photographs and videos of sexual conduct to her, and that he had asked her to send him explicit images of herself with the purpose of inducing her to engage in sexual conduct. The court convicted defendant of two counts of luring a minor.

Defendant appeals the judgment of conviction and assigns error to the trial court's denial of his suppression motion. As noted, he presents two arguments: first, Jimenez did not have any authority to investigate a suspected violation of a PPS condition and, second, even if Jimenez did have that authority, Jimenez lacked reasonable suspicion of such a violation and, hence, lacked authority to expand the scope of the traffic stop to investigate it. We conclude that Jimenez did not have any authority to investigate the suspected PPS violation and, hence, that he impermissibly expanded the scope of the traffic stop.

Article I, section 9, of the Oregon Constitution[1] prohibits unreasonable seizures by the government. A traffic stop is a type of on-going seizure. *Arreola-Botello*, 365 Or at 712, 451 P3d 939. "Police authority to perform a traffic stop arises out of the facts that created probable cause to believe that there has been unlawful, noncriminal activity, *viz*., a traffic infraction." *State v. Rodgers/Kirkeby*, 347 Or 610,

---

[1] That provision states:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

623, 227 P3d 695 (2010); *see* ORS 810.410(2), (3) (authorizing police officers to conduct traffic stops for traffic violations). Thus, the scope of a traffic stop is constrained by subject-matter and durational limitations. *Areolla-Botello*, 365 Or at 712. The subject-matter limitation means that, to safeguard a stopped driver's constitutional protections against unreasonable seizures, an officer's activities during a traffic stop must be "reasonably related to the purpose of the traffic stop" or supported by an independent constitutional justification. *Id.*; *cf. Rodgers/Kirkeby*, 347 Or at 623 ("Police authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed.").

One such independent constitutional justification that authorizes police to expand the subject-matter and durational scope of a traffic stop exists when, during the course of a stop, an officer develops reasonable suspicion that the driver has engaged in other criminal activity. Reasonable suspicion of criminal activity exists if the officer subjectively suspects that an individual has committed, or is about to commit, a crime, and that belief is "objectively reasonable under the totality of the circumstances." *State v. Ehly*, 317 Or 66, 79, 854 P2d 421 (1993).

All of those standards point to a fundamental principle of law enforcement action: if a law enforcement officer seeks to do something, the officer must point to an identifiable source of legal authority to take the action. *See Chambers*, 287 Or App at 844-45 ("[A]n officer may stop a person based on a reasonable suspicion that the person has engaged in conduct for which the legislature has explicitly provided a statutory authority to arrest."); *id.* at 845-46 (discussing additional cases). Here, the state does not identify any legal authority that authorized Jimenez to investigate a suspected violation of a PPS condition.

We begin with the trial court's rationale for denying the motion to suppress. In its oral ruling, the trial court analogized Jimenez's investigation of a suspected PPS violation to an officer's authority to arrest, and therefore investigate, someone for violating the terms of their probation. The

trial court, like the state on appeal, relied on ORS 137.545(2) and *State v. Hiner*, 240 Or App 175, 246 P3d 35 (2010).

ORS 137.545(2) gives police officers the authority to "arrest a probationer without a warrant for violating any condition of probation." We have repeatedly held that statutes that authorize police officers to arrest a person based on specific statutory violations imply an officer's authority to stop and investigate the person based on reasonable suspicion that the person has violated those statutes. In *Hiner*, we held that a police officer had authority to stop the defendant based on a subjective belief that the defendant was in violation of his probation terms. 240 Or App at 179-80. We reasoned that the express statutory authority of police officers to arrest a person for a probation violation in ORS 137.545 "implie[d] the authority to stop persons reasonably suspected of violating that probation condition" in order to investigate that suspicion. *Id*. at 180.

We reasoned similarly to conclude that a police officer may stop a person based upon probable cause to believe that the person has violated an abuse-prevention restraining order because ORS 133.310(3) gives an officer authority to arrest a person for violating such a restraining order, which implies the authority to investigate a suspected violation. *State v. Steinke*, 88 Or App 626, 628-29, 746 P2d 758 (1987). And we applied the same reasoning to conclude that a police officer has authority to stop minors suspected of violating a curfew statute because the applicable statutes expressly authorize a police officer to take such suspects into custody. *State v. Morris*, 56 Or App 97, 102-03, 641 P2d 77, *rev den*, 293 Or 340 (1982).

More recently, we declined to hold that a police officer has implied authority to stop a person based on reasonable suspicion that the person had violated the terms of a diversion agreement because nothing in the diversion statutes authorizes police officers to arrest a person for failing to comply with diversion conditions. *Chambers*, 287 Or App at 846-87. In *Chambers*, a police officer who was coordinating a victim-impact panel noticed that the defendant was acting in a "highly distracting" manner by using a tennis ball to rub her legs and upper thighs. *Id*. at 841. The officer became

concerned that the defendant was causing a distraction to others and was under the influence of drugs. *Id*. The officer took the defendant outside of the panel room and questioned her about her use of drugs. The defendant admitted she had taken drugs for which she did not have a prescription—an act prohibited by her diversion agreement. The officer conducted a warrantless search of the defendant and her purse and discovered a weapon, an expired conceal-carry permit, and more unprescribed drugs. The defendant was ultimately arrested, charged, and convicted for that conduct.

On appeal of the trial court's denial of the defendant's motion to suppress evidence from the police encounter, we rejected the state's argument that the officers had lawful authority to investigate the defendant's suspected violation of a diversion agreement. We reasoned that the state's analogy to *Hiner* was unpersuasive because the diversion statutes, unlike the probation statutes at issue in *Hiner*, do not authorize a police officer to arrest or stop a program participant for failing to comply with the terms of the diversion agreement. *Id*. at 847-48. We reversed and remanded the trial court's denial of the defendant's motion to suppress. *Id*. at 849.

In every one of the cases in which we have held that an officer has implied authority to stop and investigate someone for certain conduct, there was a statute authorizing a police officer to arrest someone for that conduct. Such a statute does not exist here. Accordingly, Jimenez did not have the authority to investigate or stop defendant for a suspected violation of a PPS condition.

Recognizing that no statute authorizes a police officer to arrest a person for violating a PPS condition, the state argues that a person on PPS remains under the supervision of the state, which, in its view, confers on police officers the authority to arrest a person on PPS. The state points to ORS 144.350 in support of that argument.

ORS 144.350 provides the Department of Corrections (DOC) and other statutorily defined "supervisory authority" with the legal authority to "order the arrest and detention of any person under the supervision of" DOC if the department

has reasonable grounds to believe that such a person has violated the conditions of PPS. ORS 144.350(1)(a)(A); ORS 144.087(1) ("'[S]upervisory authority' means the state or local corrections agency or official designated in each county by the county's board of county commissioners or county court to operate corrections supervision services, custodial facilities, or both."). The statute says nothing about a police officer's authority to act on a suspected violation of a PPS condition.

Indeed, we have recognized that ORS 144.350 is limited to DOC and the statutorily defined supervisory authority. *State v. Smith*, 292 Or App 335, 339-40, 424 P3d 755 (2018). A police officer's authority to arrest someone suspected of violating a condition of their parole must come from a PO's order to arrest the individual. *State v. Meier*, 145 Or App 179, 185-86, 929 P2d 1052 (1996). ORS 144.350 similarly requires an order from a supervisory authority to arrest a person suspected of violating their PPS conditions. Here, Jimenez did not receive the detainer from defendant's supervising officer to arrest defendant until after Jimenez had already interrogated defendant about the suspected PPS violation and after defendant had made the incriminating statements. In those circumstances, Jimenez was not authorized to act upon his suspicion.

Seeking a different result, the state posits that Jimenez was authorized to investigate and arrest defendant under ORS 131.615. That statute authorizes police officers to make a reasonable inquiry of a person who an officer "reasonably suspects *** has committed or is about to commit a crime." ORS 131.615(1). The state posits that violation of a PPS condition is a "crime" that an officer can investigate without an order from the PO, because, in the state's view, a violation of PPS is punishable by jail time. *See* ORS 144.106(2)(b) (making jail time a possible sanction for a PPS violation); ORS 161.515(1) ("A crime is an offense for which a sentence of imprisonment is authorized.").

It is true, as the state notes, that violation of a PPS condition may be sanctioned by the imposition of jail time. That alone, however, does not make a violation of a PPS condition a crime. The full definition of a "crime" requires that

the act for which a sentence of imprisonment may be imposed be "either a felony or a misdemeanor." ORS 161.515(2). And the state does not point to anything to suggest that a violation of a PPS condition is either a felony or a misdemeanor. Therefore, the general authority given to police officers by ORS 131.615 to investigate crimes did not authorize Jimenez to investigate defendant's violation of the PPS conditions.

It follows, then, that Jimenez did not have reasonable suspicion that defendant had committed a crime as a basis to justify expanding the scope of the traffic stop. As noted, an officer may expand the scope of a traffic stop if, during the course of the stop, the officer develops reasonable suspicion that the person has engaged in other criminal activity. That was not the case here. A violation of a PPS condition is not a crime and is not something that the statutes expressly or by implication authorize a police officer to investigate. Thus, no matter how "specific and articulable" the facts Jimenez described were to his suspicion that defendant may have been violating a PPS condition, Jimenez did not have authority to investigate that suspicion without first presenting the suspicion to defendant's supervising officer.

Finally, the state posits that Jimenez's unauthorized investigation of whether defendant had violated a PPS condition was a statutory violation under ORS 136.432 and not a constitutional violation that warrants suppression of evidence. We are unpersuaded. Evidence obtained in violation of a person's constitutional rights must be excluded from trial. Here, Jimenez violated defendant's right to be free from unreasonable seizure when Jimenez abandoned the initial reason for the traffic stop—the faulty lighting on the rear license plate—and began inquiring about the suspected PPS violation, all without authorization from defendant's supervising officer. That violation is of constitutional magnitude and requires suppression of the evidence obtained as a result.

Reversed and remanded.