Argued and submitted December 20, 2010, reversed and remanded
February 16, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELAINA JO BAILEY,
*Defendant-Appellant.*

Curry County Circuit Court
08CR0772; A141474

248 P3d 442

Jedediah Peterson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Paul L. Smith, Assistant Attorney-in-Charge of Criminal Appeals, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General.

Before Brewer, Chief Judge, and Gillette, Senior Judge.

GILLETTE, S. J.

## GILLETTE, S. J.

This is a criminal case in which defendant was convicted in a trial to the court of two counts of disorderly conduct in the second degree, ORS 166.025, and one count of criminal trespass in the second degree, ORS 164.245. The court sentenced her to an 18-month period of probation and imposed certain conditions in connection with that probation, including 80 hours of community service. Defendant appeals, assigning as error (1) the trial court's proceeding to trial without assuring that she had waived her constitutional right to trial by jury, (2) the trial court's refusal to grant a continuance after the state filed an amended charging instrument, and (3) the trial court's refusal to "merge" one of her disorderly conduct convictions with her criminal trespass conviction. On the record before us, the first assignment of error is well taken. We therefore reverse defendant's convictions and remand the case to the trial court for further proceedings.[1]

The facts are essentially undisputed. Defendant and her companion, Gonzalez, entered a liquor store in Port Orford to buy alcohol. Because both were visibly intoxicated, they were refused service. They left the liquor store and, while proceeding up the middle of the street (Highway 101), began a verbal altercation that grew in volume and profanity as the couple continued along the street. Eventually, they turned off that street and proceeded into the adjacent neighborhood, but their verbal sparring continued.

Based on citizen complaints, Creighton, the city police chief, went looking for the pair. He found them standing on opposite sides of another street, where defendant was heaping abuse on Gonzalez. Creighton was able to convince the two to quiet down; apparently calmer, they left the scene. Creighton saw them almost immediately thereafter, however, and they had reopened their verbal feud. Creighton again requested that the two calm down, and they apologized and said that they would do so.

---

[1] Because we find the first assignment of error to be well taken, it is unnecessary for us to reach the other two assignments.

After their second encounter with Creighton, defendant and Gonzalez walked through some nearby woods, where an RV park was located. The path that they followed took them through the RV park. (The path was barred by a fence that was designed to discourage trespassers; defendant and Gonzalez simply lifted the fence and walked under it.) While in the park, defendant and Gonzalez reheated their argument, making so much noise that three park residents, including the park host, confronted them and demanded that they leave. As is commonplace in such circumstances, the erstwhile antagonists united to focus their very loud disapproval on the three interveners.[2] The noise brought Creighton to the scene, this time with another officer. Defendant and Gonzalez were arrested, and the present charges ensued.[3]

██ Under the Oregon Constitution, persons accused of crimes are absolutely entitled to have their cases tried by jury, unless the trial record affirmatively demonstrates that such defendants have waived that right in writing. Article I, section 11, of the Oregon Constitution, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * * [but] any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing * * *."

The Oregon Supreme Court has described the right embodied in Article I, section 11, this way:

"The special peculiarity of Article I, section 11, does not lie in the fact that it describes a personal right. That is a characteristic that it shares with other constitutional provisions, such as Article I, section 8 (right of free expression), section 9 (right to be free from unreasonable searches and seizures), and section 12 (protection against double jeopardy), to name but a few. The distinction instead lies in the

_____

[2] A more explicit recitation of what was said in the confrontation between defendant and Gonzalez, on the one hand, and the park residents, on the other, would not be of value to the parties, the bench, or the bar, and certainly would reflect no credit on defendant or her companion.

[3] Gonzalez subsequently pleaded guilty to a charge of disorderly conduct. He is not involved in this appeal.

fact that Article I, section 11, not only recognizes a right but also specifies the only way in which that right may be lost, *viz.*, by a written waiver executed before trial commences, together with trial court consent."

*State v. Barber*, 343 Or 525, 529, 173 P3d 827 (2007). Moreover, because the jury trial right identified in Article I, section 11, is "unique," *id.*, it is not subject to the usual requirements concerning preservation of error. Indeed, adherence by a trial judge to the requirement of a written, pretrial waiver "is itself a substantive constitutional right to which the accused is entitled." *Id.* at 530.

■ Defendant asserts that there is no written waiver in the present record that specifically meets the requirements of Article I, section 11 (and no evidentiary indication that such a waiver in fact exists). The state responds that there is a writing in the record that is sufficient to meet the constitutional requirement. We turn to that question.

The writing on which the state relies is a "conditional release agreement," which defendant signed on the day that she was arraigned on the underlying charges. The agreement contains the following statement: "If I fail to appear, I realize that my release agreement will be revoked, a warrant will be issued for my arrest and the jury will be notified not to appear." The state teases out the foregoing sentence and concludes that "[o]ne possible reading of the language is that defendant knew her trial would not be to a jury, if[, after failing to appear for an earlier court conference, defendant nonetheless appeared on the day set for trial and] the trial proceeded on that date."

■ We shall not spell out the state's reading of the sentence further because, with respect, we find it unpersuasive. The sentence is about the consequences of failing to appear after being released conditionally—defendant will lose her right to be free on release, will be subject to a warrant for her arrest, and the like. But, although the sentence warns the released party of a number of dire consequences should she fail to appear when ordered to do so, it says nothing as to warn that defendant's signature also will constitute a waiver of a right to a jury trial. Indeed, the very most that can be said for the sentence is that it predicts that a jury trial may

not be available on the day that was earlier chosen for it—a far cry from declaring that there will be no jury trial at all. We think that a written waiver of a criminal defendant's constitutional right to trial by jury must be made of sterner stuff. The sentence does not meet the specific requirements of Article I, section 11, as explained by the court in *Barber*. It follows that the trial court erred in proceeding to try defendant's charges to the court alone, without affirmatively establishing that defendant had waived her right to a jury trial. Such error requires reversal.[4]

Reversed and remanded.

---

[4] Defendant did not object to proceeding to trial without a jury. However, as the *Barber* opinion explains, this particular species of error is one that is apparent on the face of the record and, because of the unique specificity of Article I, section 11, this court has no discretion to ignore the error, once it is called to our attention. *Barber*, 343 Or at 528-30.