Argued and submitted November 8, 2021, reversed and remanded
March 23, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATALIE LYNN KRIEGER,
*Defendant-Appellant.*

Lane County Circuit Court
19CR06134; A172683

508 P3d 62

Defendant challenges her convictions for driving under the influence of intoxicants (DUII), ORS 813.010, and possession of controlled substances, ORS 475.894, raising two assignments of error. She first argues that the trial court erred in denying her motion to suppress, because, under *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), the investigating officer violated defendant's rights under Article I, section 9, of the Oregon Constitution by asking her questions that exceeded the scope of the traffic stop. She also contends that the court erred by proceeding to a stipulated facts trial in the absence of a written jury waiver, an error that the state concedes. *Held*: The Court of Appeals accepted the state's concession on the jury waiver issue, and, addressing the suppression issue, concluded that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

Karrie K. McIntyre, Judge.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Defendant challenges her convictions for one count of driving under the influence of intoxicants (DUII), ORS 813.010, and one count of possession of controlled substances, ORS 475.894, raising two assignments of error. She first argues that the trial court erred in denying her motion to suppress because, under *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), the investigating officer violated defendant's rights under Article I, section 9, of the Oregon Constitution by asking her questions that exceeded the scope of the traffic stop. She also contends that the court erred by proceeding to a stipulated facts trial in the absence of a written jury waiver, an error that the state concedes. Although we reverse defendant's convictions on that latter basis, we also address the suppression issue, which will arise on remand, and conclude that the trial court erred in denying defendant's motion to suppress. Accordingly, we reverse and remand.

We review the denial of a motion to suppress for legal error and are bound by the trial court's factual findings if there is any constitutionally sufficient evidence to support them. *State v. Escudero*, 311 Or App 170, 171, 489 P3d 569 (2021).

Officer West pulled defendant over for speeding in a construction zone and because a preliminary license check suggested that she did not have a valid operator's license. Upon initiating the stop, West informed defendant that their contact was being recorded and asked her, "[d]o you live in this area?" and if she had noticed she was in a construction zone. The record reflects that West asked whether defendant lived in the area because she wanted to know if defendant was familiar with the construction zone and the reduced speed. She asked where defendant was coming from, and defendant said she was coming from court. West then asked for defendant's license and proceeded to also ask, "What are you doing up here?" West next asked defendant, "[W]here are you coming from today?" and then inquired if defendant smoked marijuana because West could "smell a pretty good odor of it." Defendant replied that she did not.

At the suppression hearing, defense counsel asked West, "Now, are you asking her where she's living as part of a * * * tool [to assess] if [she] could multitask?" West responded that she did not know why she "specifically" asked those questions "right then and there" but acknowledged that "communication is a tool for impairment." She affirmed on further cross-examination, however, that her "question about where [defendant] lives ha[d] nothing to do about her speeding." West also testified that defendant's answers to her questions inquiring what she was doing in the area and where she was coming from left West confused. West found it "odd that defendant kept saying she moved to Coos Bay and that she was on her way from Roseburg, yet she was traveling south on the freeway." Finally, upon learning that defendant did not have insurance, West asked if she could see a citation that defendant had in her car, which revealed that defendant had appeared in court for possession of methamphetamine.

West continued to ask various questions, both related and unrelated to the traffic stop, and began to observe that defendant had a "low and raspy voice, droopy eyelids, [and] eyelid tremors," which West believed indicated that defendant was on the downside of a central nervous system stimulant. She returned to her car to call defendant's probation officer and to print the ticket for driving without a license and insurance. After West resumed contact, defendant eventually admitted to using methamphetamine the day before and consented to field sobriety tests; West arrested her for DUII after she performed poorly on the tests. Upon being arrested, defendant admitted to possessing methamphetamine and handed it over to West.

Before trial on the charges of DUII and possession of methamphetamine, defendant moved to suppress the evidence obtained as a result of the extension of the scope and duration of the traffic stop to investigate circumstances beyond those that originally gave rise to reasonable suspicion of a traffic violation. At the suppression hearing, West testified that she did not detect indicators of impairment when she initially observed defendant speeding. She acknowledged that the odor of marijuana on its own is not

an indicator of impairment and admitted that asking about defendant's citation was unrelated to the speeding ticket, but testified that she had already developed reasonable suspicion that defendant was driving while impaired by the time she returned to her car to write the citation, based on the smell of marijuana, defendant's eyelid tremors, droopy eyelids, and the fact that her voice was low, raspy, and hard to hear.

The trial court made factual findings consistent with the above and concluded that West had reasonable suspicion to investigate DUII at the point that West asked defendant if she smoked marijuana, based on the physical characteristics that defendant was displaying, and "in conjunction with [defendant] providing confusing and illogical responses about where she was travelling from." The court found that, "[a]t that point, [West] indicated she had reasonable suspicion that [defendant] was under the influence." It also found that "whatever was going on in those seven minutes" that West questioned defendant at the initiation of the stop "did not unreasonably expand the scope of the stop or the duration of the stop" and that the "detention was not an unreasonable period of time." It determined that none of the evidence obtained as a result of West's questions unlawfully exceeded the scope or duration of the traffic stop, and thus denied defendant's motion to suppress.

After the suppression hearing, the court conducted an oral colloquy to determine that defendant was giving up her right to a trial freely and voluntarily and with sufficient time to consult her attorney before deciding to proceed. After a brief stipulated facts trial, the trial court found her guilty as to both charges.

On appeal, defendant contends that, under *Arreola-Botello*, officers may not conduct investigative activities or inquiries beyond the scope of a traffic stop without reasonable suspicion that a specific other crime or type of crime has been committed. In defendant's view, West's initial questions, including asking defendant what she was doing in the area, where she was coming from, whether defendant was staying in the area, and asking to see defendant's court citation, were unrelated to the purposes of the traffic stop.

Further, defendant argues that, because West did not have reasonable suspicion of DUII at the point those questions were asked, West illegally expanded the scope of the stop in violation of her Article I, section 9, rights. Defendant also argues that, because the record does not contain a written waiver of her right to a jury trial, the bench trial was conducted in error and her convictions must be reversed.

The state maintains that the questions were justified by reasonable suspicion of DUII and therefore did not violate the subject matter limitation in *Arreola-Botello*. The state does not assert that the questions defendant takes issue with are related to the traffic stop; rather, the state maintains that there was no Article I, section 9, violation because the questions were justified by reasonable suspicion of DUII. The state asserts that West's testimony established that she immediately observed upon contact with defendant the physical indicators of impairment, which were alone sufficient to establish that she had subjective reasonable suspicion that defendant was driving under the influence of intoxicants, which was objectively reasonable. Thus, according to the state, West developed reasonable suspicion of DUII before asking defendant *any* questions, even those that were concededly unrelated to investigating or processing those violations, but that were related to investigating a possible DUII.

As noted above, the state concedes defendant's second assignment of error and asserts that we must reverse defendant's convictions based on that plain error. We accept that concession. "There is no waiver of a jury trial unless that waiver is in writing and, without a waiver, [a] defendant should * * * be[] tried by a jury." *State v. Barber*, 343 Or 525, 530, 173 P3d 827 (2007). Thus, a judge errs "in going to trial *at all*" absent a written jury waiver. *Id.* (emphasis in original). Further, with respect to that kind of error under Article I, section 11, "we cannot identify any way in which an appellate court may elect under ORAP 5.45(1) either to refuse to recognize the error or, having recognized it, refuse to correct it." *Id.*; *see also State v. Bailey*, 240 Or App 801, 806 n 4, 248 P3d 442 (2011) ("[T]his particular species of error is one that is apparent on the face of the record and,

because of the unique specificity of Article I, section 11, this court has no discretion to ignore the error, once it is called to our attention."). Here, in the absence of a written jury waiver, we must reverse defendant's convictions.

We proceed to address defendant's challenge to the denial of her motion to suppress, which will arise on remand. Article I, section 9, establishes the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure." "[W]hen a motorist is stopped for a traffic infraction, that stop implicates Article I, section 9." *Arreola-Botello*, 365 Or at 701. "[U]nder Article I, section 9, as under ORS 810.410(3)(b), police authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is complete or reasonably should be completed." *State v. Watson*, 353 Or 768, 778, 305 P3d 94 (2013) (internal quotation marks omitted).

In *Arreola-Botello* (which was decided after the suppression hearing in this case), the Supreme Court rejected the unavoidable lull doctrine and held that "all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations." 365 Or at 712. Therefore, "an officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop or that have an independent constitutional justification." *Id*. An "'unavoidable lull' does not create an opportunity for an officer to ask unrelated questions, unless the officer can justify the inquiry on other grounds." *Id*.

Here, we conclude that several of the initial questions that West asked immediately after she stopped defendant's vehicle were not related to the purpose of the traffic stop. West had probable cause to believe that defendant had committed a traffic violation when she observed defendant speeding in a construction zone and she was permitted to investigate that infraction along with that of driving without a license. At the outset of the stop, West asked defendant a series of questions: (1) "Do you live in this area?"; (2) "What are you doing up here?"; (3) "Where are you coming

from today?"; and (4) if West could see the citation that was in defendant's car. Although West explained that the first question was related to the traffic stop and whether defendant was familiar with the construction zone, she also testified that the second and third questions "had nothing to do" with defendant speeding and she did not know "specifically" why she asked them. West conceded that the fourth question was not related to the purpose of the traffic stop. Therefore, nothing in the record establishes that the second, third, and fourth questions were related to the purpose of the traffic stop, and we conclude that they were not. Given that conclusion, we must next address whether the nontraffic-stop questions were justified by reasonable suspicion that defendant was driving under the influence of intoxicants.

As mentioned, the state argues that West had reasonable suspicion that defendant was driving under the influence of intoxicants *before* she asked defendant *any* questions, based on West's observations of defendant's physical impairment. However, the problem with the state's argument is that the trial court found, based on West's testimony, that she had reasonable suspicion of DUII only after she observed defendant's physical characteristics of impairment and "*in conjunction with* [defendant] providing confusing and illogical responses" to West's questions about where she was traveling from. (Emphasis added.) That finding is supported by the record. Thus, West did not have reasonable suspicion that defendant committed a crime separate from the traffic infractions until after she asked questions that were not reasonably related to that investigation—that is, when West asked defendant what she was doing there and where she was coming from. The trial court's conclusion that West's additional questioning did not exceed the scope or expand the duration of the traffic stop thus was at odds with the Supreme Court's decision in *Arreola-Bottelo. Id.* at 712; *see also State v. McBride*, 303 Or App 292, 294-96, 463 P3d 611 (2020) (accepting state concession that the trial court erred in denying defendant's motion to suppress under the new rule announced in *Arreola-Bottello*, "[b]ecause [the officer's] inquiry regarding drugs was not reasonably related to the purpose of the traffic stop, and did not have an independent constitutional justification, it violated the

subject-matter limitation that Article I, section 9, imposes on investigative inquiries during an ongoing seizure"). Because West asked questions unrelated to the traffic stop before she developed reasonable suspicion that defendant was driving under the influence of intoxicants and she did not have an independent constitutional justification for that further inquiry, her questions violated the subject-matter limitation that Article I, section 9, imposes on investigative inquiries during an ongoing seizure.

We conclude that all of the evidence obtained as a result of West's unlawful questions to defendant, including the subsequent field sobriety tests, defendant's statements, and the methamphetamine, must be suppressed because they were the product of the unconstitutional conduct. *See Arreola-Bottelo*, 365 Or at 714 (recognizing that generally "evidence will be suppressed if the evidence was the product of an unconstitutional act"); *McBride*, 303 Or App at 296 (stating the same).

Reversed and remanded.