No. 237 April 17, 2024 67

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEROME EMERSON WICKS,
*Defendant-Appellant.*
Linn County Circuit Court
19CR62792; A178918

Thomas McHill, Judge.

Submitted March 14, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kate E. Morrow, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals his conviction for unlawful possession of methamphetamine, ORS 475.894. In a motion to suppress, defendant argued that a state trooper lacked reasonable suspicion to expand the subject matter of a traffic stop by asking questions related to an investigation for driving under the influence of intoxicants (DUII). In his sole assignment of error, he contends that the trial court erred in denying that motion. We affirm.

We review for legal error but are "bound by the trial court's factual findings if there is any constitutionally sufficient evidence to support them." *State v. Krieger*, 318 Or App 441, 442, 508 P3d 62 (2022). We summarize the facts consistent with that standard of review.

At about 4:30 p.m., Oregon State Trooper Andrews was driving north on a rural road, when he saw the nose of defendant's truck sticking out into the southbound lane. The rear tires of defendant's truck were stuck in a small roadside ditch, unable to get traction. There was a gravel apron beside defendant's truck, which allowed for farm equipment to access an adjacent cornfield. At the time, that field was dry and contained only stubble. Andrews believed that a driver could safely turn around in the cornfield.

Moments after Andrews came upon defendant, defendant got free of the ditch and drove away in the direction that Andrews had been heading. Andrews followed defendant for about half a mile. During that time, defendant did not engage in any unsafe or otherwise improper driving. But, due to defendant's initial position in the ditch, Andrews initiated a traffic stop for the infractions of stopping on a highway and failing to maintain a lane. Defendant pulled over properly and safely.

When Andrews walked up to defendant's window, defendant immediately said, "That was the wrong place to turn around." Andrews noticed that defendant had decayed or missing teeth, a tense or rigid face, and a choppy or gravelly voice. He also saw that defendant's "entire body was

shaking."[1] He associated those observations with drug use. He asked defendant, "[W]hen was the last time you used?"

In his motion to suppress, defendant argued that the question was unrelated to the purposes of the traffic stop and not justified by reasonable suspicion of a DUII. Consequently, he argued that the question was unlawful and that all subsequently discovered evidence is presumed to be tainted by that illegality and subject to suppression. The trial court disagreed, ruling that Andrews had reasonable suspicion to initiate a DUII investigation because defendant had been stuck in a ditch and displayed physical symptoms of drug intoxication.

Article I, section 9, of the Oregon Constitution, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A traffic stop is a "seizure" that requires a constitutional justification. *State v. Rodgers/Kirkeby*, 347 Or 610, 621-24, 227 P3d 695 (2010). An officer's investigative activity during a traffic stop is subject to both durational and subject-matter limitations. *State v. Arreola-Botello*, 365 Or 695, 712, 451 P3d 939 (2019) ("[A]n officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop or that have an independent constitutional justification."). Officers investigating a traffic infraction cannot engage in "investigative activities, including investigative inquiries" that are unrelated to that infraction, unless those activities have an "independent constitutional justification," such as reasonable suspicion of another crime. *Id.* In this case, the question is whether Andrews had reasonable suspicion of DUII when he asked defendant about drug use.

Reasonable suspicion exists "when an officer can point to specific and articulable facts that give rise to a reasonable inference that the defendant committed or was about to commit a specific crime or type of crime." *State*

---

[1] Defendant notes that the interaction was recorded on Andrews's body camera and argues that that video "at most shows an occasional, minor quiver in defendant's neck or cheek during the first 54 seconds of the interaction—far from what Andrews described in his testimony." However, as defendant acknowledges, only a portion of defendant's body is visible in the video; everything below defendant's chest was obscured by the car door.

*v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). That inference must be "objectively reasonable in light of the totality of circumstances known to the officer."[2] *State v. Bradley*, 329 Or App 736, 741, 542 P3d 56 (2023). Again, the trial court's ruling in this case was premised on two specific and articulable facts: (1) defendant got stuck in a ditch, and (2) defendant's physical characteristics suggested recent drug use. We address both in turn.

First, the trial court found that defendant being stuck in the ditch in close proximity to the gravel apron supported reasonable suspicion of DUII. Defendant argues that no reasonable inferences about impairment can be drawn from the failure to use the nearby gravel apron to turn around, because there was no evidence that it was big enough to allow defendant to turn around without entering a cornfield. And he argues that a reasonable driver would likely avoid entering a farmer's field at all. We agree with defendant on that point. However, the fact that defendant got his truck stuck in a ditch while trying to turn around is still sufficient on its own—irrespective of the gravel apron— to infer that defendant made a poor choice while driving, at least to some degree.[3] Although getting stuck in a ditch may not be sufficient, in these circumstances, to provide reasonable suspicion of DUII—it is still one factor in the calculation.

Second, the trial court relied on the facts relating to defendant's physical characteristics to conclude there was reasonable suspicion of DUII. Defendant argues that his decayed or missing teeth and gravelly voice are not evidence

---

[2] Put another way, reasonable suspicion has both "an objective and a subjective component." *State v. Wampler*, 325 Or App 722, 727, 530 P3d 133, *rev den*, 371 Or 477 (2023) (internal quotation marks omitted). At issue in this case is the objective component, because defendant does not dispute that Andrews subjectively believed that defendant had committed DUII. *See id.* (the subjective component is satisfied when officer subjectively believes that a person has committed a crime).

[3] Although defendant notes that a "practically infinite number of circumstances could explain why a driver pulled to the side of a road[, and] sometimes drivers get stuck," defendant also acknowledges that he told Andrews that he chose the "wrong place to turn around." Therefore, for purposes of the reasonable-suspicion analysis, Andrews would have known that defendant got stuck as a consequence of defendant's attempt to turn around and not an emergency of some sort.

of present intoxication and, thus, do not add anything to the analysis. And, on that point, we agree. However, Andrews testified that defendant's body was shaking, which he identified as a symptom of present intoxication. Again, such shaking may have many non-drug-related causes and may not be sufficient on its own to provide reasonable suspicion of DUII. But it is a factor in the calculation.

Here, there are two "specific and articulable facts" that support reasonable suspicion: (1) that defendant got his truck stuck in a ditch while attempting to turn around, and (2) that he displayed shaking, which could be a physical symptom of present intoxication. Although those facts could have multiple explanations, together they allow for an objectively reasonable inference that defendant may have been driving while impaired by an intoxicant and, therefore, support reasonable suspicion. For that reason, we conclude that Andrews did not unlawfully expand the subject-matter limitations of defendant's stop when he asked defendant about drug use.

Affirmed.